# EXHIBIT A

**POLLACK LAW LLC**
**By: Ronald S. Pollack, Esquire**
Attorney I.D. No. 56553
Lower Southampton Village
210 East Street Road, Suite 3A
Feasterville, PA 19053
(215) 396-9660

**ASSESSMENT OF DAMAGES REQUIRED**

Attorney for Plaintiffs

Filed and Attested by the
Office of Judicial Records
13 JAN 2026 04:51 pm
S. GILLIAM

**COURT OF COMMON PLEAS**
**PHILADELPHIA COUNTY**

| | |
|---|---|
| **JOSHUA EDERY** and **ROBERT KACH** | |
| **Plaintiffs,** | **NO: 250101786** |
| **vs.** | |
| **Best Buy - Store 432, ET. ALS.** | **MAJOR JURY** |
| **Defendants.** | |

## NOTICE TO DEFEND

### NOTICE

You have been sued in court. If you wish to defend against the claims set forth the following pages, you must take action with twenty (20) days after this complaint and notice are served, by entering a written appearance personally or by attorney and filing in writing with the court your defenses or objections to the claims set forth against you. You are warned that if you fail to do so the case may proceed without you and a judgment may be entered against you by the court without further notice for any money claimed in the complaint or for any other claim or relief requested by the plaintiff. You may lose money or property or other rights important to you.

YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE. IF YOU DO NOT HAVE A LAWYER OR CANNOT AFFORD ONE, GO TO OR TELEPHONE THE OFFICE SET FORTH BELOW TO FIND OUT WHERE YOU CAN GET LEGAL HELP.

PHILADELPHIA BAR ASSOCIATION
LAWYER REFERRAL AND INFORMATION SERVICE
One Reading Center
Philadelphia, Pennsylvania 19107
(215) 238-6333
TTY: (215) 451-6197

### AVISO

Le han demandado a usted en la corte. Si usted quieta celenderse de estas demandas expuestas en las paginas siguientes, usted tiene veinte (20) dias de plazo al partir dese techa de la demanda y la notificacion. Hace falts asentar una comparesencia ascrita o en persona o con un abogado y entregar e la corte en forma escrita sus dalensas o sus objeciones a las demandas en contra da su persona. Sea avisado que si usted ne se defiancea, la corte tomare medidas y puede continuar e uamanda en contra suya sin previo aviso o notification. Adames, la corte pueda dicidir a favor del demandante y Requiera que usted cumpla con todas las provisiones de esta Demanda. Usted puada parder cinero o sus propiedaces u osros Darachos importantas para usted.

I LEVE ESTA DEMANDA A UN ABOGADO IMMEDIATAMENTE. SI NO TIENE ABOGADO O SI NO TIENE EL DINERO SUFICIENTE DE PAGAR TAL SERVICO, VAYA EN PERSONA O LLAME POR TELEFONO A LA OFICINA CUYA DIRECCION SE ENCUENTRA ESCRITA ABAJO PARA AVERIGUAR DONDE SE PUEDE CONSEGUIR ASISTENCIA LEGAL.

ASOCIACION DE LICENCIADOS DE FILADELFIA
SERVICIO DE REFERENCIA E INFORMACION LEGAL
One Reading Center
Filadelfia, Pennsylvania 19107
(215) 238-6333
TTY: (215) 451-6197

**POLLACK LAW, LLC**
**By: Ronald S. Pollack, Esquire**
Attorney I.D. No. 56553
Lower Southampton Village
210 East Street Road, Suite 3A
Feasterville, PA 19053
(215) 396-9660

**ASSESSMENT OF DAMAGES REQUIRED**

Filed and Attested by the Office of Judicial Records 13 JAN 2026 04:51 pm S. GILLIAM

Attorney for Plaintiffs

**COURT OF COMMON PLEAS**
**PHILADELPHIA COUNTY**

**JOSHUA EDERY**
227 Loretta Drive #1
Monroeville, PA 15146
**and**
**ROBERT "BOB" KACH**
227 Loretta Drive #1
Monroeville, PA 15146

**Plaintiffs,**
**vs.**

**BEST BUY - STORE 432, a/k/a BEST BUY MONROEVILLE**
200 Mall Circle Drive
Monroeville, PA 15146
**and**
**BEST BUY CO., INC., a/k/a BEST BUY STORES, L.P., BEST BUY CLUB, a/k/a BEST BUY**
100 S. 5th Street, Suite 1075
Minneapolis, MN 55402
**and**
**BEST BUY CO., INC., a/k/a BEST BUY STORES, L.P., BEST BUY CLUB, a/k/a BEST BUY**
7601 Penn Avenue South
Richfield, MN 55423
**and**
**JOHN/JANE DOES 1-3 and ABC COMPANIES 1-3** (fictitious names for the persons or entities who are responsible for the services involving the installation of television sets through Best Buy - Store 432)

**Defendants.**

**TRIAL DIVISION**

**No.: 250701786**

**MAJOR JURY**

## COMPLAINT IN CIVIL ACTION AND DEMAND FOR TRIAL BY JURY

## GENERAL ALLEGATIONS

1. Plaintiff Joshua Edery is an adult individual residing at 227 Loretta Drive #1, Monroeville, Pennsylvania 15146.

2. Plaintiff Robert "Bob" Kach is an adult individual residing at 227 Loretta Drive #1, Monroeville, Pennsylvania 15146.

3. Defendant Best Buy - Store 432, a/k/a Best Buy Monroeville (hereinafter sometimes referred to as "Defendant B.B. 432"), is, upon information and belief after reasonable investigation, a corporation, or other form of business organization, with a principal place of business at the above-captioned address and permitted to engage in business activities within and throughout the Commonwealth of Pennsylvania, including within the County of Philadelphia.

4. Defendant B.B. 432 regularly conducts business within Philadelphia County by maintaining a constant presence through its retail store operations, selling products online and shipping to and throughout Philadelphia County upon request, and selling consumer electronics and providing installation services to residents and customers throughout Pennsylvania, that would include through Philadelphia County, on a continuous and habitual basis.

5. This Court has personal jurisdiction over Defendant B.B. 432 pursuant to Pennsylvania's long-arm statute, 42 Pa.C.S. § 5322(a)(1), in that Defendant B.B. 432 transacts business within the Commonwealth of Pennsylvania, including within Philadelphia County, on a regular and continuous basis and for which Defendant B.B. 432 realizes a pecuniary benefit.

6. Venue is proper in Philadelphia County pursuant to Pa.R.C.P. 2179(a)(2) because Defendant B.B. 432 regularly conducts business in Philadelphia County through Best Buy’s retail store locations and business operations within Philadelphia County, as well as selling

products online and shipping to and throughout Philadelphia County upon request, and selling consumer electronics and providing installation services to residents and customers throughout Pennsylvania, that would include through Philadelphia County, on a continuous and habitual basis.

7. The exercise of personal jurisdiction over Defendant B.B. 432 comports with traditional notions of fair play and substantial justice and satisfies the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

8. Defendant Best Buy Co., Inc., a/k/a Best Buy Stores, L.P., Best Buy Club, a/k/a Best Buy (hereinafter "Defendant B.B. Corporate"), is, upon information and belief, and after reasonable investigation, a corporation, or other form of business organization, with its principal place of business maintained at the above-captioned address and permitted to engage in business activities within the Commonwealth of Pennsylvania, including but not limited to conducting business through its stores in and throughout Pennsylvania and within the County of Philadelphia.

9. Defendant B.B. Corporate regularly conducts business within Philadelphia County through its retail stores, authorized dealers, and business operations located throughout Philadelphia County, providing goods and services to residents and customers of Philadelphia County on a continuous and habitual basis.

10. Defendant B.B. Corporate has corporate office addresses at 100 S. 5th Street, Suite 1075, Minneapolis, MN 55402, and/or 7601 Penn Avenue South, Richfield, MN 55423.

11. Defendant B.B. Corporate, has a store located at 2300 S. Christopher Columbus Boulevard, Philadelphia, PA 19148 (known as Store Number 898).

12. Defendant B.B. Corporate, has a store located at 9733 Roosevelt Boulevard, Philadelphia, PA 19114 (known at Store Number 589).

13. Best Buy functions as a national retail chain, not a franchise system.

13. Best Buy stores in and throughout the United States, including the Philadelphia stores, are corporate-owned locations operated by Defendant B.B. Corporate, not franchises or individually owned stores.

14. Defendant B.B. Corporate, by and through it store locations, regularly conducts business within Philadelphia County by maintaining a constant presence through its retail store operations, selling products online and shipping to and throughout Philadelphia County upon request, and selling consumer electronics and providing installation services to residents and customers throughout Pennsylvania, that would include through Philadelphia County, on a continuous and habitual basis.

15. This Court has personal jurisdiction over Defendant B.B. Corporate pursuant to Pennsylvania's long-arm statute, 42 Pa.C.S. § 5322(a)(1), in that Defendant B.B. Corporate transacts business within the Commonwealth of Pennsylvania, including within Philadelphia County, on a regular and continuous basis through its retail stores, authorized dealers, sales operations, and service operations.

16. This Court has personal jurisdiction over Defendant B.B. Corporate pursuant to Pennsylvania's long-arm statute, 42 Pa.C.S. § 5322(a)(3), in that Defendant B.B. Corporate caused harm or tortious injury in this Commonwealth by an act or omission in this Commonwealth, specifically by causing the improper installation of the television at Plaintiffs' Pennsylvania residence, which resulted in the television falling and causing injuries to Plaintiffs.

17. This Court has personal jurisdiction over Defendant B.B. Corporate pursuant to Pennsylvania's long-arm statute, 42 Pa.C.S. § 5322(b),

which extends Pennsylvania's jurisdiction to the fullest extent allowed under the Constitution of the United States, and the exercise of jurisdiction in this case satisfies constitutional requirements.

18. Venue is proper in Philadelphia County pursuant to Pa.R.C.P. 2179(a)(2) because Defendant B.B. Corporate regularly conducts business in Philadelphia County, with store locations within Philadelphia County. Defendant B.B. Corporate maintains a constant physical presence in Philadelphia County through multiple retail stores and business operations.

19. Under Hangey v. Husqvarna Professional Products, Inc., 293 A.3d 1130 (Pa. 2023), venue is proper in Philadelphia County, as the Defendant maintains a constant physical presence in the county and regularly conducts business there, which Defendant B.B. Corporate does.

20. The exercise of personal jurisdiction over Defendant B.B. Corporate comports with traditional notions of fair play and substantial justice and satisfies the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

21. Defendants John/Jane Does 1-3, fictitious names, represents, at all relevant times, the identities for the agents, servants, workmen, ostensible agents, borrowed servants, contractors, subcontractors, independent contractors and/or employees that delivered, installed, and/or mounted the television set at Plaintiffs' residence through, for, and/or on behalf of Defendants B.B. 432, and B.B. Corporate (hereinafter sometimes collectively referred to as "Best Buy Defendants").

22. Defendants ABC Companies 1-3, fictitious names, represents, at all relevant times, the entity(ies) responsible for the services involving the installation of the television set at Plaintiffs' residence for, through

and/or on behalf of Best Buy Defendants, in the event that Best Buy Defendants are determined not to have delivered, installed, and/or mounted the television set at Plaintiffs' residence.

23. At all times material hereto, Defendants B.B. 432, B.B. Corporate, John/Jane Does 1-3, and/or ABC Companies 1-3, jointly, severally, individually, and/or in the alternative, owned, operated, managed, maintained, controlled, had an interest in, and/or was responsible for the care, management, maintenance, operation, delivery, product handling, performance, establishment of protocols, and/or establishment of safety rules related to the delivery, installation, and/or television mounting services offered for customers, by and/or through Best Buy Defendants, including Defendant Best Buy - Store 432.

24. At all times material hereto, Defendants B.B. 432, B.B. Corporate, John/Jane Does 1-3, and/or ABC Companies 1-3, acting jointly, severally, individually, and/or in the alternative, and/or by and through its agents, servants, workmen, borrowed servants, ostensible agents, managers, directors, shareholders, officer, administrators, contractors, subcontractors, independent contractors, and/or employees acting within the course and scope of their employment, agency, and/or service with Defendants, were responsible for the care, management, maintenance, operation, installation, delivery, product handling, performance, establishment of protocols, and/or establishment of safety rules related to the delivery, installation, and/or television mounting services offered for customers by and/or through Best Buy Defendants.

25. In the event that Defendants B.B. 432, B.B. Corporate, John/Jane Does 1-3, and/or ABC Companies 1-3, jointly, severally, individually, and/or in the alternative, did not own, operate, manage, maintain,

control, have an interest in, and/or were not responsible for the care, management, maintenance, operation, delivery, product handling, performance, installation, establishment of protocols, and/or establishment of safety rules related to the delivery, installation, and/or television mounting services offered for customers, by and/or through Best Buy Defendants, on or before January 17, 2023, then Defendants B.B. 432, B.B. Corporate, Best Buy, John/Jane Does 1-3, and/or ABC Companies 1-3, jointly, severally, individually, and/or in the alternative, assumed the liability and/or responsibility for the actions of those that were responsible for the care, inspection, management, maintenance, performance, delivery, installation, product handling, performance establishment of protocols, and/or establishment of safety rules related to delivering, installing, hanging, and/or mounting the television set at 227 Loretta Drive, Monroeville, Pennsylvania 15146.

26. This Court has personal jurisdiction over all Defendants pursuant to Pennsylvania's long-arm statute, 42 Pa.C.S. § 5322, which provides for the exercise of personal jurisdiction over persons who act directly or by an agent:

(1) By transacting any business in this Commonwealth, 42 Pa.C.S. § 5322(a)(1);

(2) By contracting to supply services or things in this Commonwealth, 42 Pa.C.S. § 5322(a)(2);

(3) By causing harm or tortious injury in this Commonwealth by an act or omission in this Commonwealth, 42 Pa.C.S. § 5322(a)(3); and

(4) To the fullest extent allowed under the Constitution of the United States, 42 Pa.C.S. § 5322(b).

27. Defendants satisfy each of these bases for personal jurisdiction:

A. Defendants transact business in Pennsylvania through their retail

stores, authorized dealers, distribution operations, installation services, and sales of consumer goods to Pennsylvania residents, including Plaintiffs;

B. Defendants contracted to supply installation services in Pennsylvania by agreeing to deliver, install, and mount the television at Plaintiffs' Pennsylvania residence;

C. Defendants caused harm and tortious injury in Pennsylvania by acts and omissions in Pennsylvania, specifically by negligently installing the television at Plaintiffs' Pennsylvania residence, which resulted in the television falling and causing injuries to Plaintiffs in Pennsylvania; and

D. The exercise of jurisdiction satisfies constitutional requirements under the Due Process Clause.

28. Venue is proper in Philadelphia County pursuant to Pennsylvania Rule of Civil Procedure 2179(a)(2), which provides that a personal action against a corporation or similar entity may be brought in any county where the corporation or similar entity regularly conducts business.

29. Venue is proper in Philadelphia County pursuant to the holding of Hangey v. Husqvarna Professional Products, Inc., 293 A.3d 1130 (Pa. 2023).

30. Defendants Best Buy regularly conduct business in Philadelphia County as aforesaid, as well as:

A. Maintaining and operating retail stores at various locations within Philadelphia County;

B. Selling consumer electronics, appliances, and related products to residents of Philadelphia County on a continuous and habitual basis;

C. Providing installation services, delivery services, technical support, and customer service to residents of Philadelphia

County;

D. Employing personnel who work within Philadelphia County;

E. Maintaining a constant physical presence in Philadelphia County through retail operations; and

F. Marketing and advertising their products and services to residents of Philadelphia County.

31. Best Buy Defendants satisfy these standards for proper venue in Philadelphia County.

32. Best Buy Defendants maintain multiple retail store locations in Philadelphia County, which constitute a constant physical presence in the county.

33. The Philadelphia stores are open to the public on a regular and continuous basis, sell products and services to Philadelphia County residents habitually, and directly further Best Buy's corporate objectives of selling consumer electronics and related services. This constant physical presence and regular conduct of business establishes proper venue in Philadelphia County as a matter of law under Hangey.

34. Under Pennsylvania law, "where venue is proper as to any one defendant, it is proper as to all defendants." See Pa.R.C.P. 1006©

35. Because venue is proper in Philadelphia County as to Defendant B.B. Corporate, venue is proper as to all defendants named in this action, including John/Jane Does 1-3 and ABC Companies 1-3.

36. Pennsylvania law gives Plaintiffs the right to select venue among all counties in which venue is proper. Plaintiffs have selected Philadelphia County as the venue for this action, and that selection is entitled to deference and should not be disturbed.

37. The exercise of personal jurisdiction over all Defendants in Pennsylvania, and the exercise of venue in Philadelphia County, comports with traditional notions of fair play and substantial justice

and satisfies the requirements of the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

38. Pursuant to the doctrine of ostensible agency, even if Defendants' actors were independent contractors rather than employees, Defendants held them out to Plaintiffs as their agents and representatives. Plaintiffs reasonably believed that the installers were Defendants' employees and agents based on their presentation through Defendants' store, Defendants' marketing of installation services, and the manner in which the installation transaction was conducted. Defendants are therefore liable for the actions of these ostensible agents under Pennsylvania law.

39. On or about January 17, 2023, Plaintiffs Joshua Edery and Robert Kach had a television and/or mount delivered, installed, and/or mounted at their residence located at 227 Loretta Drive, Monroeville, Pennsylvania 15146 (hereinafter sometimes referred to as "the Premises").

40. At all times material hereto, upon information and belief, Plaintiffs purchased the subject television and/or television mount from Defendant Best Buy - Store 432.

41. As part of the purchase transaction, the subject television was to be delivered, installed, and/or mounted by Defendants B.B. 432, B.B. Corporate, John/Jane Does 1-3, and/or ABC Companies 1-3, jointly, severally, individually, and/or in the alternative, and/or by and through its/their agents, servants, workmen, borrowed agents, ostensible agents, contractors, subcontractors, independent contractors, and/or employees acting within the course of scope of their agency, employment, and/or service agreement(s) with Best Buy Defendants (hereinafter sometimes collectively identified as "Defendants' actors").

42. At all times material hereto, upon information and belief after reasonable investigation, the television Plaintiffs purchased was an LG

- 86" Class UP8770 Series LED 4K UHD Smart webOS TV.

43. At all times material hereto, upon information and belief after reasonable investigation, the model number of the subject TV was 86UP8770PUA.

44. At all times material hereto, the subject TV had a SKU number of 6452986.

45. At all times relevant hereto, the subject TV weighed approximately one hundred pounds (100 lbs.), exclusive of the mounting bracket, or stand.

46. At the same date and place aforesaid, Defendants' actors delivered, installed, and/or mounted the aforementioned TV and/or mount on a wall inside the Premises.

47. At the same date and place aforesaid, Defendants' actors used lifting straps to assist them in moving the subject TV into the Premises.

48. At all times material hereto, the subject TV was attached, fixed, and/or secured to the mount and/or mounting bracket.

49. The wall Defendants' actors installed and/or mounted the subject TV on was made of drywall.

50. At all times material hereto, the TV mount, mounting bracket, fasteners, and/or other hardware used to mount the subject TV were not anchored, attached, affixed, and/or otherwise properly secured to the drywall studs.

51. At no time, during all relevant times hereto, did the Defendants or Defendants' actors build, construct, place, affix, or create blocking, or wood blocking, on which the TV and mounting bracket could be affixed.

52. At all times material hereto, the drywall did not have the structural integrity to support the mounted TV without it being properly anchored, attached, affixed, and/or otherwise secured to the drywall studs, or to blocking that had been created.

53. Industry standards, including but not limited to the Video Electronics Standards Association (VESA) mounting standards and the manufacturer guidelines provided by LG, indicate that it is best practices for televisions weighing over 50 pounds, to be anchored directly to wall studs, not merely to drywall, to ensure safe and secure mounting and to prevent the television from dislodging or falling.

54. Defendants knew or, in the exercise of reasonable care, should have known that industry standards necessitated direct stud anchoring, or mounting on blocking, for televisions of the subject TV's weight and size and that drywall-only mounting of a 100-pound television is insufficient, unsafe, and violates accepted and/or suggested industry standards.

55. A properly installed television mount secured to wall studs or blocking, would not fail or dislodge under normal circumstances or during normal and expected use of the television.

56. At the same date and place aforesaid, Defendants' actors installed and mounted the subject TV in Plaintiffs' residence.

57. Shortly thereafter, Plaintiff Joshua Edery was cleaning the floor underneath and/or about the mounted TV.

58. While Plaintiff Joshua Edery was cleaning the floor, the mounted TV, suddenly and without warning, dislodged from the wall causing it to come crashing down onto Plaintiff Edery as the TV was not properly installed and/or mounted to the wall.

59. The failure of the mounted television to remain secured to the wall on the same day of installation, without any external force or contact by Plaintiffs, is evidence that the installation was deficient and did not meet minimum safety standards, VESA standards or suggestions, or manufacturer guidelines and suggestions.

60. The sudden failure of the installation within hours of completion would

not have occurred if Defendants' actors had properly anchored the television mount to wall studs as required by industry standards, industry suggestions, and/or the principles of reasonable care, and as known to be necessary by Defendants.

61. At all times material hereto, neither Plaintiff Joshua Edery, nor Plaintiff Robert Kach, touched, moved, adjusted, manipulated, and/or otherwise contacted the mounted TV in any way prior to it falling, and/or contribute to its falling off the wall.

62. Plaintiffs maintain that the manner in which the subject TV was installed and/or mounted created an unreasonably dangerous, defective, and/or hazardous condition.

63. The aforesaid condition of the mounted TV had been allowed to remain in such an unreasonably dangerous, defective, and/or hazardous condition by Defendants, individually, jointly, severally, and/or in the alternative, and/or by and through its actors, despite knowledge that customers would be in the area of, and using the television within their home.

64. The subject TV was damaged and rendered inoperable as a result of it falling off the wall.

65. Thereafter, Plaintiffs contacted Defendants Best Buy, individually and/or collectively, to report the incident.

66. On or about February 7, 2023, Plaintiff Robert Kach emailed Defendants requesting that Defendants, individually and/or collectively, remove the damaged, defective, dangerous, and broken TV from the Premises.

67. At all times material hereto, Defendants, individually, jointly, severally, and/or in the alternative, knew and/or should have known that the subject TV weighed approximately 100 lbs.

68. Defendants B.B. 432, B.B. Corporate, John/Jane Does 1-3, and/or ABC

Companies 1-3, individually, jointly, severally, and/or in the alternative, denied Plaintiff Kach's request to remove the broken, damaged, defective and/or dangerous TV from the Premises despite knowledge that Defendants' actors installed and/or mounted a TV in a customers' home, that fell off the wall on the same day of it being mounted, creating a dangerous, defective, and/or hazardous condition.

69. At the time Defendants refused Plaintiff Kach's request to remove the television, Defendants knew that their actors had improperly installed the television, resulting in its fall and Plaintiff Edery's injury, and that the TV remained in a dangerous and defective condition.

70. Defendants knew or should have known that requiring Plaintiffs to remove a 100-pound broken television, which had already caused injury due to Defendants' negligence, created an unreasonable and foreseeable risk of additional serious harm to Plaintiffs.

71. Defendants' refusal to remediate the dangerous condition they had created in Plaintiffs' home, after receiving actual notice of the incident through Plaintiff Edery's injury and Plaintiff Kach's subsequent requests, constituted both negligent conduct and a reckless indifference to Plaintiffs' safety and demonstrated negligence, gross negligence, and recklessness, warranting an award of punitive damages.

72. Defendant's actions were reckless in that Defendants’ actors chose to mount an approximate 100 pound television to drywall, without it being properly anchored or blocked.

73. Defendant’s actions bore the risk of potentially causing serious injury and/or death, if the television set fell onto someone, and the manner of installation was inappropriate, outrageous, and without due caution for others, rendering the manner of installation reckless.

74. At the time that Defendants’ actor(s) installed the subject television,

the defendants, by and through their actors, knew or should have known that improper anchoring or bracing of a television set, when mounted, would be dangerous and risk property damage or bodily injury.

75. At the time that Defendants' actor(s) installed the subject television, the defendants, by and through their actors, knew or should have known that the mounting of the television set must not be performed recklessly.

76. At the time that Defendants' actor(s) installed the subject television, the defendants, by and through their actors, knew or should have known that the mounting of televisions set must not be performed in a manner that would needlessly endanger others.

77. At the time that Defendants' actor(s) installed the subject television, the defendants, by and through their actors, knew or should have known that the mounting of televisions set must be performed in a manner that would protect others form harm.

78. By mounting the subject television set in the manner in which it was mounted, the Defendants acted recklessly and with wanton disregard for the safety of others, including, but not limited to, the Plaintiffs.

79. By mounting the subject television set in the manner in which it was mounted, the Defendants acted in total disregard of the risks known to them and/or represented conduct that is so obvious that they knew or should have known that it was highly probable that harm would result from their actions and conduct.

80. Defendants' actions were consciously indifferent to the potential, foreseeable and known consequences.

81. Defendants' actions represent a reckless disregard for the safety of the plaintiffs.

82. Defendants' actions represent willful and wanton conduct.

83. Defendants' actions amounts to reckless conduct.

84. On or about February 10, 2023, at approximately 3:00 P.M., Plaintiffs Joshua Edery and Robert Kach attempted to move the subject TV from their residence because Best Buy had refused to assist in removing the dangerous condition.

85. Given the condition and weight of the subject TV, as Plaintiffs Edery and Kach were attempting to move the TV, an edge thereon was caused to puncture Plaintiff Robert Kach's foot.

86. Plaintiff Robert Kach maintains that the condition that caused the puncture of his left foot was an unreasonably dangerous, defective, and/or hazardous condition caused and perpetuated by Defendants' negligence and refusal to remediate.

87. The aforesaid condition of the TV had been allowed to remain in such an unreasonably dangerous, defective, and/or hazardous condition for an extended period of time by Defendants Best Buy, jointly, severally, individually, and/or in the alternative, despite knowledge that its customers needed assistance in removing a large television from the place upon which it fell and from their residence that was improperly installed and/or mounted by Defendants' actors, and despite knowledge that any attempt to move the broken television would expose Plaintiffs to serious risk of injury.

88. At all times material hereto, Defendants B.B. 432, B.B. Corporate, John/Jane Does 1-3, and/or ABC Companies 1-3, jointly, severally, individually, and/or in the alternative, knew and/or should have known that improperly installing and/or mounting a television in its customers' homes is unreasonably dangerous, defective, and/or hazardous.

89. At all times material hereto, Defendants B.B. 432, B.B. Corporate, John/Jane Does 1-3, and/or ABC Companies 1-3, jointly, severally,

individually, and/or in the alternative, and/or and through its actors, knew and/or in the exercise of reasonable care, should have known, of the unreasonably dangerous, defective, and/or hazardous manner that the subject TV was installed in Plaintiffs' residence for some time prior to its falling off the wall of Plaintiffs' home.

90. At all times material hereto, Defendants B.B. 432, B.B. Corporate, John/Jane Does 1-3, and/or ABC Companies 1-3, jointly, severally, individually, and/or in the alternative, knew and/or should have known that it should repair, clear, clean, mitigate, and/or otherwise remedy any dangerous, defective, and/or hazardous condition created by its actors.

91. At all times material hereto, Defendants B.B. 432, B.B. Corporate, John/Jane Does 1-3, and/or ABC Companies 1-3, jointly, severally, individually, and/or in the alternative, and/or and through its actors, knew and/or in the exercise of reasonable care, should have known, of the unreasonably dangerous, defective, and/or hazardous condition created by the broken TV for some time prior to February 10, 2023, especially as they received notice of the T.V.'s fall off the wall and Mr. Kach's request for removal.

92. At all times material hereto, Defendants B.B. 432, B.B. Corporate, John/Jane Does 1-3, and/or ABC Companies 1-3, jointly, severally, individually, and/or in the alternative, and/or and through its actors, knew and/or should have known that improperly installing and/or mounting a television creates an unreasonably dangerous, defective, and/or hazardous condition.

93. At all times material hereto, Defendants B.B. 432, B.B. Corporate, John/Jane Does 1-3, and/or ABC Companies 1-3, jointly, severally, individually, and/or in the alternative, were responsible for making sure that television delivered, installed, and/or mounted by

Defendants' actors was properly inspected, maintained, controlled, cared for, and/or would not pose as a trap, snare, hazard, and/or dangerous conditions for customers in their residence(s).

94. At all times material hereto, Defendants B.B. 432, B.B. Corporate, John/Jane Does 1-3, and/or ABC Companies 1-3, jointly, severally, individually, and/or in the alternative, were responsible for making sure that any dangerous, defective, and/or hazardous condition created by, and/or contributed to by Defendants' actors while performing in-residence television installation and/or mounting services is cleared, cleaned, repaired, and/or otherwise remediated.

95. At all times material hereto, Defendants B.B. 432, B.B. Corporate, John/Jane Does 1-3, and/or ABC Companies 1-3, jointly, severally, individually, and/or in the alternative, were responsible for making sure that televisions delivered, installed, and/or mounted by Defendants' actors were done so in a proper, safe, careful, and professional manner so as to prevent a television and/or mount from detaching, dislodging, and/or falling from the wall in which it was installed and/or mounted.

96. At all times material hereto, Defendants B.B. 432, B.B. Corporate, John/Jane Does 1-3, and/or ABC Companies 1-3, jointly, severally, individually, and/or in the alternative, knew that televisions installed and/or mounted for, and on behalf of customers, should be in a condition that does not needlessly endanger customers within their own homes.

97. At all times material hereto, Defendants B.B. 432, B.B. Corporate, John/Jane Does 1-3, and/or ABC Companies 1-3, jointly, severally, individually, and/or in the alternative, knew that unsafe conditions caused by inadequate and/or improper installation of a television and/or television mount for and on behalf of customers should be

eliminated or guarded against.

98. At all times material hereto, Defendants B.B. 432, B.B. Corporate, John/Jane Does 1-3, and/or ABC Companies 1-3, jointly, severally, individually, and/or in the alternative, knew that unsafe conditions caused by and/or contributed to by its actors should be eliminated or guarded against.

99. At all times material hereto, Defendants B.B. 432, B.B. Corporate, John/Jane Does 1-3, and/or ABC Companies 1-3, jointly, severally, individually, and/or in the alternative, knew that televisions installed and/or mounted for customers should be done so in conformity with industry standards, including but not limited to VESA standards and manufacturer guidelines.

100. At all times material hereto, Defendants B.B. 432, B.B. Corporate, John/Jane Does 1-3, and/or ABC Companies 1-3 knew that customers' residences in which televisions, mounts, mounting brackets, fasteners, and other mounting hardware are delivered, installed, and/or mounted by Defendants' actors should be properly maintained.

101. At all times material hereto, Defendants B.B. 432, B.B. Corporate, John/Jane Does 1-3, and/or ABC Companies 1-3 knew that televisions, mounts, mounting brackets, fasteners, and other mounting hardware delivered, installed, and/or mounted by Defendants' actors should be properly inspected.

102. At all times material hereto, Defendants B.B. 432, B.B. Corporate, John/Jane Does 1-3, and/or ABC Companies 1-3 knew that televisions, mounts, mounting brackets, fasteners, and other mounting hardware delivered, installed, and/or mounted by Defendants' actors should be properly installed.

103. At all times material hereto, Defendants B.B. 432, B.B. Corporate, John/Jane Does 1-3, and/or ABC Companies 1-3 knew that televisions

should not be installed and/or mounted on a wall that does not have the structural integrity to support the television and/or television mount.

104. At all times material hereto, Defendants B.B. 432, B.B. Corporate, John/Jane Does 1-3, and/or ABC Companies 1-3 knew that televisions, mounts, mounting brackets, fasteners, and other mounting hardware that weight approximately 100 pounds should be mounted on wall studs or blocked by constructing a wood or other substance block on which to mount the television and mounting bracket.

105. At all times material hereto, Defendants B.B. 432, B.B. Corporate, John/Jane Does 1-3, and/or ABC Companies 1-3 knew that the subject television, along with the mounting bracket, weighted more than 100 pounds.

106. At all times material hereto, Defendants B.B. 432, B.B. Corporate, John/Jane Does 1-3, and/or ABC Companies 1-3, jointly, severally, individually, and/or in the alternative, knew that appropriate mounts, mounting brackets, fasteners, and/or other mounting hardware should be used when installing and/or mounting a television and/or television mount on a wall.

107. At all times material hereto, Defendants B.B. 432, B.B. Corporate, John/Jane Does 1-3, and/or ABC Companies 1-3 knew that televisions, mounts, mounting brackets, fasteners, and other mounting hardware delivered, installed, and/or mounted by Defendants' actors should be properly installed.

108. At all times material hereto, Defendants B.B. 432, B.B. Corporate, John/Jane Does 1-3, and/or ABC Companies 1-3, jointly, severally, individually, and/or in the alternative, knew that televisions, mounts, mounting brackets, fasteners, and/or other mounting hardware should be properly anchored, attached, affixed, and/or otherwise secured to

wall studs when being installed and/or mounted on drywall.

109. At all times material hereto, Defendants B.B. 432, B.B. Corporate, John/Jane Does 1-3, and/or ABC Companies 1-3, jointly, severally, individually, and/or in the alternative knew that its agents, servants, workmen, borrowed servants, ostensible agents, contractors, subcontractors, independent contractors, and/or employees acting within the course and scope of their agency, must not create and/or contribute to dangerous, defective, and/or hazardous conditions in the homes of its customers.

109. At all times material hereto, Defendants B.B. 432, B.B. Corporate, John/Jane Does 1-3, and/or ABC Companies 1-3, jointly, severally, individually, and/or in the alternative, knew that dangerous, hazardous, and/or defective conditions caused, and/or contributed to, by its agents, servants, workmen, borrowed servants, ostensible agents, contractors, subcontractors, independent contractors, and/or employees acting within the course and scope of their agency, employment, and/or service with Defendants, should be properly repaired, cleaned, cleared, and/or remedied.

110. As a result of the foregoing events, Plaintiff Joshua Edery sustained injuries that may include serious and/or permanent bodily injuries as more fully described hereinafter.

111. As a result of the foregoing events, Plaintiff Robert Kach sustained injuries that may include serious and/or permanent bodily injuries as more fully described hereinafter.

112. As a result of the foregoing events, Plaintiffs sustained property damage as more fully described hereinafter.

113. The injuries, harms, losses, and damages sustained by Plaintiffs Joshua Edery and Robert Kach, as described hereinafter, were caused solely by the negligence and carelessness of Defendants B.B. 432, B.B.

Corporate, John/Jane Does 1-3, and/or ABC Companies 1-3, jointly, severally, individually, and/or in the alternative, and were not caused in any manner whatsoever by any act or failure to act on the part of Plaintiffs Joshua Edery or Robert Kach

**COUNT I**

**PLAINTIFF JOSHUA EDERY v. DEFENDANTS B.B. 432, B.B. CORPORATE, BEST BUY, JOHN/JANE DOES 1-3 and/or ABC COMPANIES 1-3 (NEGLIGENCE)**

114. Plaintiff Joshua Edery incorporates by reference paragraphs one (1) through one hundred thirteen (113), as though the same were set forth at length herein, in conformity with Pa.R.C.P. 1019(g).

115. Defendants B.B. 432, and B.B. Corporate, jointly, severally, individually, and/or in the alternative, were negligent and careless in the care, management, maintenance, inspection, operation, and/or performance of their television delivery, installation, and/or mounting services including installing, product handling, establishing of protocols, and/or establishing of safety rules related the delivering, installing and/or mounting of televisions for and on behalf of customers, as they created and/or allowed an unreasonably dangerous, defective, and hazardous condition of the aforesaid mounted TV to exist, resulting in the mounted TV falling off the wall and onto Plaintiff Joshua Edery.

116. Plaintiffs invoke the doctrine of res ipsa loquitur. The falling of a properly installed television mount within hours of installation is an event that does not occur in the absence of negligence. The television, mount, and all installation hardware were within Defendants' exclusive control at the time of installation and use. The incident occurred without any fault or contribution by Plaintiffs. The fact that a properly installed 86-inch television weighing approximately 100 pounds, or more, when mounted in accordance with industry standards, would not

Case ID: 250101786

spontaneously dislodge and fall, speaks for itself as to the negligence of Defendants in the installation of the television mount.

117. At the aforesaid date and place, Defendants Best Buy acting jointly, severally, individually, and/or in the alternative, and/or by and through its agents, servants, workmen, borrowed servants, ostensible agents, managers, directors, shareholders, officer, administrators, contractors, subcontractors, independent contractors, and/or employees acting within the course and scope of their employment, agency, and/or service with Defendants, further consisted of the following:

A. Neglecting to install and/or mount the aforementioned TV and/or TV mount in a reasonably safe condition and/or safe manner;

B. Neglecting to maintain reasonably safe conditions while performing in-residence television installation and/or mounting services for customers;

C. Neglecting to warn or provide adequate warnings to, and for Plaintiff regarding, and associated with, the installation and/or mounting of the TV and/or TV mount;

D. Neglecting to ensure that the TV and mount were securely installed and/or mounted to the wall of the Premises;

E. Neglecting to ensure that the TV and mount would not become dislodged, detached, and/or fall from the wall in which it was mounted;

F. Neglecting to secure the TV and mount, mounting bracket, fasteners, and/or other mounting hardware directly into the drywall studs to properly distribute and support the weight of the mounted TV;

G. Neglecting to properly identify wall studs prior to installation;

H. Neglecting to secure the TV and mount, mounting bracket, fasteners, and/or other mounting hardware utilizing a wood

block, or block created by an alternate sturdy source, to properly distribute and support the weight of the mounted TV;

I. Neglecting to use appropriate tools, hardware, and/or other methods to locate wall studs prior to installing and/or mounting the aforementioned television at Plaintiff's residence;

J. Neglecting to assess the structural integrity of the wall;

K. Neglecting to test the stability and load-bearing capacity of the television and mount following installation;

L. Neglecting to inspect the mounted TV when Defendants knew, and/or should have known, that televisions and/or mounts should be secured to wall studs, or a block created, when being installed and/or mounted on drywall;

M. Neglecting to inspect the mounted TV when Defendants knew, and/or should have known, that customers would be using the television and would be about the area of the television in their own residence(s);

N. Neglecting to properly and adequately maintain the mounting system on the premises when Defendants knew, and/or should have known that customers would be using the mounted television and would be in the area about the television in their own residence(s);

O. Creating a dangerous, defective, and hazardous condition by the manner in which the TV and mount were installed and/or mounted within customers' residences, including but not limited to Plaintiff Joshua Edery's home;

P. Permitting a dangerous, defective, and hazardous condition of the mounted TV to exist in Plaintiff's residence in the area where Plaintiff Joshua Edery was cleaning;

Q. Neglecting to perform quality control and/or safety inspections

after installation was completed;

R. Neglecting to utilize and/or install a more effective mount, mounting bracket, and/or other mounting hardware to install, hang, and/or mount the TV;

S. Improperly installing and/or mounting the television, mount, mounting bracket, fasteners, and/or other mounting hardware that had the result of making the mounted TV less secure and more dangerous;

T. Neglecting to address deficient television installation and/or mounting that Defendants knew was inadequate under the circumstances;

U. Neglecting to take into consideration that the mounted TV was an anticipated hazard where improperly mounting a large television would likely cause harm;

V. Failing to comply with Video Electronics Standards Association (VESA) mounting standards applicable to large-format televisions weighing approximately 100 pounds, or more with the mounting bracket attached;

W. Failing to comply with manufacturer installation guidelines provided by LG for the subject television model 86UP8770PUA;

X. Neglecting to use a stud finder or other appropriate detection equipment to locate wall studs prior to installation;

Y. Neglecting to calculate or verify that the mounting hardware and wall structure could support the combined weight of the television and mounting bracket;

Z. Installing the television in a manner that violated accepted industry standards for wall-mounted televisions exceeding 50 pounds;

AA. Creating a dangerous condition through gross deviation from

industry standards and manufacturer specifications;

BB. Neglecting to appropriately design and develop, or agreeing to designs over which Defendants had final approval, safe in-residence television delivery, installation, and mounting services for customers that would avoid hazardous conditions or situations due to improper installation and mounting;

CC. Planning, designing, developing, constructing, installing, hanging, and/or mounting a television in a customer's home that was not adequately secured to wall studs, or a blocking system, to allow customers to appreciate the danger;

DD. Permitting the aforesaid defective, hazardous and dangerous condition of the mounted TV to exist where Plaintiff was cleaning his residence about the area of the TV;

EE. Neglecting to exercise due regard to those in which in-residence television delivery, installation, and/or mounting services are performed;

FF. Neglecting to exercise the degree of care required by law for the safety of Plaintiff under the circumstances;

GG. After having actual notice of the existence of the aforesaid dangerous, hazardous, and defective conditions of the mounted TV, or sufficient time having passed such that Defendants had constructive notice of the condition, Defendants neglected to correct those conditions knowing or having reason to believe that Plaintiff and/or persons in Plaintiff's position could and/or would be injured thereby;

HH. Permitting the defective and dangerous condition of the mounted TV to exist despite knowledge that the TV and mount were not secured to drywall studs or a mounting block;

II. Neglecting to observe, recognize, repair, and/or correct the

defective, dangerous, and hazardous condition that caused the mounted TV to fall onto Plaintiff Edery;

JJ. Neglecting to provide adequate safeguards to prevent injuries to Plaintiff;

KK. Planning, designing, developing, constructing, maintaining, and/or creating a dangerous, defective, and hazardous condition by the sole nature that the mounted TV fell off the wall and onto Plaintiff without being touched, adjusted, manipulated, and/or otherwise contacted;

LL. Neglecting to comply with applicable industry standards for performing in-residence television installation and mounting service for, and on behalf of, customers;

MM. Neglecting to create, promulgate, enforce, follow, and/or utilize appropriate policies, systems, and procedures as it relates to ensuring that the television and mount that were installed and/or mounted were safe for its intended uses and to ensure that customers are safe in their own homes when they are about the area of, and using, a TV mounted by Defendants;

NN. Neglecting to create, promulgate, enforce, and/or utilize appropriate policies, systems, and procedures as it relates to training its agents, servants, and/or employees to ensure that television delivery, installation, and mounting services were performed in a proper, professional, and safe manner for its intended use and to ensure that customers are safe in their own homes when they are about the area of, and using, a TV mounted by Defendants;

OO. Neglecting to observe, recognize, repair, and/or correct the defective and dangerous condition that caused the TV to fall onto Plaintiff Joshua Edery;

PP. Neglecting, as one who holds itself out as providing professional television delivery, installation, and/or mounting services for, and on behalf of its customers, to meet the duty owed to its customers, so that customers will not be unnecessarily or unreasonably exposed to danger in their residence(s);

QQ. Engaging in conduct that constituted gross negligence and reckless indifference to Plaintiffs' safety, as outlined herein above and incorporated herein in accordance with Pa.R.C.P. 1019(g);

RR. Neglecting to use due care for the safety of Plaintiff under the circumstances;

SS. Carelessly installing and/or mounting the subject TV and mount at Plaintiff Joshua Edery's residence;

TT. Permitting an incompetent person to mount plaintiffs' television;

UU. Neglecting to determine whether the person mounting the television set within plaintiffs' home possessed the ability, competency, knowledge, skills, and/or possessed the necessary mental and/or physical ability to perform such task(s);

VV. Neglecting to investigate, neglecting to properly investigate, or neglecting to take into consideration the background, knowledge, skill, expertise and/or training of the person mounting the television set within plaintiffs' home;

WW. Allowing the person mounting the television set within plaintiffs' home to perform the services outlined herein when defendants knew and/or should have known that said installer did not have sufficient knowledge, skill, training or capacity to perform the installation and/or would have a propensity towards negligence, carelessness and/or recklessness when performing such installations;

XX. Neglecting to determine the competency of the person mounting

the television set within plaintiffs' home;

YY. In the event that the Defendants maintains that there existed any form of mechanical or product defect with regard to the mounting bracket, Defendants were negligent for allowing a dangerous, unsafe, and/or defective mounting bracket to be utilized;

ZZ. In the event that the Defendants maintains that there existed any form of mechanical or product defect with regard to the mounting bracket, Defendants were negligent for neglecting to inspect the bracket before it was utilized and/or maintaining the bracket in a safe non-defective condition;

AAA. Neglecting to take into consideration that the broken TV was an anticipated hazard where moving a heavy and damaged television would likely cause harm;

BBB. Permitting the aforesaid defective, hazardous and dangerous condition of the heavy TV to remain in the area where it came to rest after falling off the wall, knowing that it created a dangerous, hazardous, unsafe, and extraordinarily heavy item to remove, resulting in a dangerous condition to its customers;

CCC. Neglecting to exercise the degree of care required by law for the safety of Plaintiff under the circumstances;

DDD. Neglecting to create, promulgate, enforce, follow, and/or utilize appropriate policies, systems, safety rules, and procedures as it relates to removing or remediating a dangerous condition within a customer's home, including the removal of a product sold by the defendants that, as a result of their fault, resulted in a dangerous and hazardous condition while it was permitted to remain within the customer's home;

EEE. Neglecting to create, promulgate, enforce, and/or utilize appropriate policies, systems, and procedures as it relates to training its agents, servants, and/or employees concerning the removal or remediation of a dangerous condition caused by one of their products sold and/or by the failure of an installation of their products;

FFF. Refusing to remove or remediate the dangerous condition when notified of the incident and requested by Plaintiffs to do so;

GGG. Allowing a dangerous and/or hazardous condition to remain at Plaintiffs' residence when Defendants knew and/or should have known of the dangerous condition of the subject TV lying on the floor of the plaintiffs' property;

HHH. Neglecting to abide by the duty of care to remove or remediate hazards and hazardous conditions created by their conduct;

III. Neglecting to remove a known hazard, i.e., the television that had fallen off the wall;

JJJ. Neglecting to act within a reasonable period of time to remove the hazardous condition, as aforesaid;

KKK. Abandoning a dangerous object left within the living space of the plaintiffs' home;

LLL. Neglecting to take into consideration that it was foreseeable the requiring a customer to move an approximate 100 pound television would result in injury;

MMM. Neglecting to take into consideration that plaintiff's attempt to move the television would likely cause injury;

NNN. Recklessly disregarding plaintiff's rights by exposing them to a high likelihood of injury by refusing to remove the heavy television that had fallen from the wall;

OOO. The defendants knew or should have known the television

weighed 100 pounds, having originally installed it, therefore the defendants were negligent, careless and reckless in asking or requiring the plaintiff to move it, knowing that it would likely cause injury;

PPP. Negligently, careless and recklessly shifting the burden of dealing with a dangerous condition they created onto the plaintiffs, knowing the task was hazardous, showing not only negligence and carelessness, but this action also demonstrates a reckless disregard for the plaintiff's safety and an attempt to avoid responsibility for their own negligent work;

QQQ. Negligently creating a tripping hazard;

RRR. Negligently creating a visual obstruction, impairing the normal use and enjoyment of the space and room inside plaintiffs' home, increasing the likelihood that plaintiff(s) would attempt to remove the television himself/themselves;

SSS. Neglecting to warn the plaintiff(s) about the dangers of attempting to life or move a television weighing an approximate 100 pounds, or more;

TTT. Abandoning responsibility for their defective work product and its consequences;

UUU. Having a conscious indifference to the risk of injury, by knowing the television weighed approximately 100 pounds, or more, and refusing to remove it despite foreseeable injury risk;

VVV. Disregarding their duty to remedy a dangerous condition they created;

WWW. Neglecting and Refusing to provide reasonable assistance under the circumstances, by failing and refusing to address a dangerous situation caused by Defendants' conduct;

XXX. Creating an unreasonable risk of harm by leaving an

approximate 100-pound, or more, television in the plaintiffs' room and refusing to remove it, creating an unreasonable risk that the plaintiff would be injured attempting to move it himself/themselves; and

YYY. Negligently hiring, training, and/or supervising their agents (actual, ostensible, or otherwise), servants, borrowed servants, bailees, employees, workmen, contractors, subcontractors, and/or independent contractors, including the person who performed the mounting of the television within Plaintiffs' home.

118. Plaintiff incorporates all of the negligent, careless and reckless acts outlined herein above as if set forth at length, in accordance with Pa.R.C.P. 1019(g) and applies them to JOHN/JANE DOES 1-3 and/or ABC COMPANIES 1-3, as their acts of negligence, carelessness and recklessness.

119. As a direct and proximate result of the negligence, carelessness and recklessness of Defendants, jointly, severally, individually, and/or in the alternative, Plaintiff Joshua Edery sustained serious and/or permanent injuries to various parts of his body, that may include the bones, muscles, tendons, ligaments, nerves and tissues in, of, and/or about his head, neck, upper, mid, low back, chest, heart, abdomen, groin, and ribs, including but not limited to, causing, exacerbating, aggravating and/or accelerating said injuries, as well as other injuries, the extent and nature of which are as yet not fully determined, all of which injuries may be permanent in nature, and have in the past caused, and may in the future cause, Plaintiff Joshua Edery great pain and suffering. (It is specifically maintained that this paragraph has been drafted by, and is the language of Plaintiff's counsel, and is meant to be all encompassing as to the potential injuries suffered by Plaintiff Joshua Edery, and, in fact, some of the injuries alleged and/or

outlined herein may not have actually been suffered. The medical investigation is continuing in this regard.)

120. By reason of aforesaid negligence, carelessness and recklessness of Defendants, jointly, severally, individually, and/or in the alternative, Plaintiff Joshua Edery has been in the past, and may in the future, be obliged to expend sums of money for medicines and medical attention, in and about endeavoring to treat and cure himself of his aforesaid injuries, some or all of which expenditures may not otherwise be recoverable.

121. Plaintiff Joshua Edery further avers that, as the result of the aforesaid incident, he has in the past been, and may in the future be, unable to attend his normal and usual duties, occupations, and avocations, to his great financial damage and loss, including but not limited to lost wages, income and loss of essential services.

122. Plaintiff Edery further avers that, as the result of the aforesaid incident, he may suffer a loss of earnings capacity, and/or a future loss of his earning capacity to his great financial damage and loss.

123. Plaintiff Joshua Edery further avers that the harms, losses, damages, injuries, and economic losses he sustained as a result of the aforesaid incident were caused solely by the negligence, carelessness and recklessness of Defendants, individually, jointly, severally, and/or in the alternative, and were not caused in any manner by any act, or failure to act, on the part of Plaintiff Joshua Edery or Plaintiff Robert Kach.

124. Plaintiff further avers that, as a result of the aforesaid incident, and the injuries and damages he sustained as a direct and proximate result thereof, he has suffered in the past and will suffer in the future physical and emotional pain and suffering, mental anguish concomitant with his physical injuries and humiliation, disability, loss of ability to

enjoy the pleasures of life, and/or disfigurement.

125. Plaintiff Joshua Edery further avers that, as a result of the aforesaid incident, he suffered property damage, and with the regard to cost of repairs, all or some of said expenses remain outstanding at this time and as such he is entitled to reimbursement for said damages.

WHEREFORE, Plaintiff Joshua Edery demands judgment in his favor against Defendants individually, collectively, jointly, severally, and/or in the alternative for:

A. Compensatory damages for physical injuries, pain and suffering, mental anguish, disability, disfigurement, and loss of enjoyment of life;

B. Economic damages for past and future medical expenses, lost wages, loss of earning capacity, and loss of essential services;

C. Property damages for the destroyed television, damaged wall and mounting equipment, and costs of remediation and repair;

D. Punitive damages sufficient to punish Defendants for their outrageous conduct and reckless indifference to Plaintiff's rights and safety;

E. Damages for delay as permitted by Pa.R.C.P. 238;

F. Costs of suit as permitted by Court Rule;

G. Pre-judgment and post-judgment interest as permitted by law; and

H. Such other and further relief as the Court deems just and equitable.

Plaintiff’s harms, losses, and damages amount to a sum in excess of $50,000.00, exclusive of interest, costs, and punitive damages.

**COUNT II**

**PLAINTIFF ROBERT KACH v. DEFENDANTS B.B. 432, B.B. CORPORATE, BEST BUY, JOHN/JANE DOES 1-3, and/or ABC COMPANIES 1-3**
**(NEGLIGENCE)**

126. Plaintiff Robert Kach incorporates by reference paragraphs one (1) through one hundred twenty-five (125) as though the same were set forth at length herein, in conformity with Pa.R.C.P. 1019(g).

127. Plaintiff Robert Kach, to avoid numerous duplicative and regurgative paragraphs outlining the specific acts of negligence, carelessness and recklessness, incorporates by reference the acts of negligence, carelessness, and recklessness as outlined within Count I, more specifically paragraphs 115 through 118, against the defendants, as though the same were set forth at length herein, in conformity with Pa.R.C.P. 1019(g).

128. Plaintiff invokes the doctrine of res ipsa loquitur as to this count as well. The subsequent injury to Plaintiff Robert Kach, caused by Defendants' refusal to remove or remediate the dangerous condition they had created, is evidence of negligence and reckless indifference.

129. In addition thereto, the defendants were negligent, careless and reckless by allowing Plaintiffs' injuries to be compounded by their forced removal of a dangerous object that Defendants refused to remediate.

130. As a direct and proximate result of the negligence and carelessness of Defendants, jointly, severally, individually, and/or in the alternative, Plaintiff Robert Kach sustained serious and/or permanent injuries to various parts of his body, that may include the bones, muscles, tendons, ligaments, nerves and tissues in, of, and/or about his foot and lower extremity, including but not limited to, causing, exacerbating, aggravating and/or accelerating said injuries, as well as other injuries, the extent and nature of which are as yet not fully determined, all of which injuries may be permanent in nature, and have in the past caused, and may in the future cause, Plaintiff Robert Kach great pain and suffering. (It is specifically maintained that this

paragraph has been drafted by, and is the language of Plaintiff's counsel, and is meant to be all encompassing as to the potential injuries suffered by Plaintiff Robert Kach, and, in fact, some of the injuries alleged and/or outlined herein may not have actually been suffered. The medical investigation is continuing in this regard.)

131. By reason of aforesaid negligence and carelessness of Defendants, jointly, severally, individually, and/or in the alternative, Plaintiff Robert Kach has been in the past, and may in the future, be obliged to expend sums of money for medicines and medical attention, in and about endeavoring to treat and cure himself of his aforesaid injuries, some or all of which expenditures may not otherwise be recoverable.

132. Plaintiff Robert Kach further avers that, as the result of the aforesaid incident, he has in the past been, and may in the future be, unable to attend his normal and usual duties, occupations, and avocations, to his great financial damage and loss, including but not limited to lost wages, income and loss of essential services.

133. Plaintiff Kach further avers that, as the result of the aforesaid incident, he may suffer a loss of earnings capacity, and/or a future loss of his earning capacity to his great financial damage and loss.

134. Plaintiff Robert Kach further avers that the harms, losses, damages, injuries, and economic losses he sustained as a result of the aforesaid incident were caused solely by the negligence and carelessness of Defendants, individually, jointly, severally, and/or in the alternative, and were not caused in any manner by any act, or failure to act, on the part of Plaintiff Robert Kach or Plaintiff Joshua Edery.

135. Plaintiff further avers that, as a result of the aforesaid incident, and the injuries he sustained as a direct and proximate result thereof, he has suffered in the past and will suffer in the future physical and emotional pain and suffering, mental anguish concomitant with his physical

injuries and humiliation, disability, loss of ability to enjoy the pleasures of life, and/or disfigurement.

136. Plaintiff Robert Kach further avers that, as a result of the aforesaid incident, he suffered property damage, and with the regard to cost of repairs, all or some of said expenses remain outstanding at this time and as such he is entitled to reimbursement for said damages.

WHEREFORE, Plaintiff Robert Kach demands judgment in his favor against Defendants individually, collectively, jointly, severally, and/or in the alternative for:

A. Compensatory damages for physical injuries, pain and suffering, mental anguish, disability, disfigurement, and loss of enjoyment of life;

B. Economic damages for past and future medical expenses, lost wages, loss of earning capacity, and loss of essential services;

C. Property damages for the destroyed television, damaged wall and mounting equipment, and costs of remediation and repair;

D. Punitive damages sufficient to punish Defendants for their outrageous conduct and reckless indifference to Plaintiff's rights and safety;

E. Damages for delay as permitted by Pa.R.C.P. 238;

F. Costs of suit as permitted by Court Rule;

G. Pre-judgment and post-judgment interest as permitted by law; and

H. Such other and further relief as the Court deems just and equitable.

Plaintiff’s harms, losses, and damages amount to a sum in excess of $50,000.00, exclusive of interest, costs, and punitive damages.

**COUNT III**

**PLAINTIFFS JOSHUA EDERY and ROBERT KACH v. DEFENDANTS (OSTENSIBLE AGENCY AND AGENCY)**

137. Plaintiffs Joshua Edery and Robert Kach incorporate by reference paragraphs one (1) through one hundred thirty-six (136), as if each were set forth at length herein, in conformity with Pa.R.C.P. 1019(g).

138. At all times relative hereto, upon information and belief, Defendants, individually, jointly, severally, and/or in the alternative, were, and/or may have been acting through their agents, servants, workmen, contractors, managers, directors, shareholders, and/or employees acting within the course and scope of their employment, agency, or service with Defendants.

139. Pursuant to the doctrine of ostensible agency, Defendants held out the installers to Plaintiffs as their agents and employees through Best Buy's marketing of the installation service, through the manner in which the service was purchased at Best Buy's store, and through the presentation of the installers as representatives of Best Buy.

140. A reasonably prudent person in Plaintiffs' position would believe that the installers were agents of Best Buy based on these circumstances.

141. Even if the installers were independent contractors rather than employees, Defendants are liable under the doctrine of ostensible agency because they held them out to the public as their agents, and Plaintiffs relied on this representation in purchasing the installation service.

142. If the installer(s) were direct employees or agents, then Defendants are responsible for their conduct under the theory of agency.

143. Defendants, individually, jointly, severally, and/or in the alternative, are therefore liable to Plaintiffs Joshua Edery and Robert Kach under the theory of agency and ostensible agency.

144. The conduct of Defendants, as enumerated herein, by and through

their agents, servants, and/or employees, caused and contributed to Plaintiffs' injuries, harms, losses, and damages as stated herein above, which are fully incorporated herein by reference pursuant to Pa.R.C.P. 1019(g).

145. As a direct and proximate result of the negligence and carelessness of Defendants, jointly, severally, individually, and/or in the alternative, and/or by and through their agents, servants, and/or employees, Plaintiffs Joshua Edery and Robert Kach were caused to suffer the injuries, harms, losses, and damages as outlined herein above, which are fully incorporated by reference as if set forth at length, in conformity with Pa.R.C.P. 1019(g).

WHEREFORE, Plaintiffs demand judgment in their favor against Defendants individually, collectively, jointly, severally, and/or in the alternative for:

A. Compensatory damages for physical injuries, pain and suffering, mental anguish, disability, disfigurement, and loss of enjoyment of life;

B. Economic damages for past and future medical expenses, lost wages, loss of earning capacity, and loss of essential services;

C. Property damages for the destroyed television, damaged wall and mounting equipment, and costs of remediation and repair;

D. Punitive damages sufficient to punish Defendants for their outrageous conduct and reckless indifference to Plaintiff's rights and safety;

E. Damages for delay as permitted by Pa.R.C.P. 238;

F. Costs of suit as permitted by Court Rule;

G. Pre-judgment and post-judgment interest as permitted by law; and

H. Such other and further relief as the Court deems just and

equitable.

Plaintiff's harms, losses, and damages amount to a sum in excess of $50,000.00, exclusive of interest, costs, and punitive damages.

**COUNT IV**

**PLAINTIFFS JOSHUA EDERY and ROBERT KACH v. DEFENDANTS (RESPONDEAT SUPERIOR)**

146. Plaintiffs Joshua Edery and Robert Kach incorporate by reference paragraphs one (1) through one hundred forty-five (145), as if each were set forth at length herein, in conformity with Pa.R.C.P. 1019(g).

147. At all times relative hereto, upon information and belief, Defendants, individually, jointly, severally, and/or in the alternative, were, and/or may have been acting through their agents, servants, workmen, managers, directors, shareholders, administrators and/or employees acting within the course and scope of their respective employment with Defendants.

148. Defendants, individually, jointly, severally, and/or in the alternative, are therefore liable to Plaintiffs Joshua Edery and Robert Kach under the theory of Respondeat Superior.

149. The conduct of Defendants, as enumerated herein, by and through their agents, servants, workmen, contractors, managers, directors, shareholders, administrators and/or employees, caused and contributed to Plaintiffs' injuries, harms, losses, and damages as stated herein above, which are fully incorporated herein by reference pursuant to Pa.R.C.P. 1019(g).

150. As a direct and proximate result of the negligence and carelessness of Defendants, jointly, severally, individually, and/or in the alternative, and/or by and through their agents, servants, and/or employees, Plaintiffs Joshua Edery and Robert Kach were caused to suffer the injuries, harms, losses, and damages as outlined herein above, which

are fully incorporated by reference as if set forth at length, in conformity with Pa.R.C.P. 1019(g).

WHEREFORE, Plaintiffs demand judgment in their favor against Defendants individually, collectively, jointly, severally, and/or in the alternative for:

A. Compensatory damages for physical injuries, pain and suffering, mental anguish, disability, disfigurement, and loss of enjoyment of life;

B. Economic damages for past and future medical expenses, lost wages, loss of earning capacity, and loss of essential services;

C. Property damages for the destroyed television, damaged wall and mounting equipment, and costs of remediation and repair;

D. Punitive damages sufficient to punish Defendants for their outrageous conduct and reckless indifference to Plaintiff's rights and safety;

E. Damages for delay as permitted by Pa.R.C.P. 238;

F. Costs of suit as permitted by Court Rule;

G. Pre-judgment and post-judgment interest as permitted by law; and

H. Such other and further relief as the Court deems just and equitable.

Plaintiff's harms, losses, and damages amount to a sum in excess of $50,000.00, exclusive of interest, costs, and punitive damages.

**COUNT V**

**PLAINTIFFS JOSHUA EDERY and ROBERT KACH v. DEFENDANTS (NEGLIGENT HIRING, TRAINING, AND SUPERVISION)**

151. Plaintiffs Joshua Edery and Robert Kach incorporate by reference paragraphs one (1) through one hundred fifty (150), as if each were set forth at length herein, in conformity with Pa.R.C.P. 1019(g).

152. Plaintiffs, to avoid numerous duplicative and regurgative paragraphs outlining the specific acts of negligence, carelessness and recklessness, incorporates by reference the acts of negligence, carelessness, and recklessness as outlined within Count I, II, III and IV, as though the same were set forth at length herein, in conformity with Pa.R.C.P. 1019(g).

153. In addition thereto, Defendants, individually, jointly, severally, and/or in the alternative, were responsible for hiring, training, and supervising the installers who performed the television installation at Plaintiffs' residence.

154. Defendants, individually, jointly, severally, and/or in the alternative, knew or should have known that failure to properly train and supervise installers in the proper methods of locating wall studs, securing mounts to studs or blocks, and/or assessing wall structural integrity would create a substantial risk of harm to customers in whose homes installations were performed.

155. Defendants, individually, jointly, severally, and/or in the alternative, breached their duty of reasonable care by neglecting to:

A. Properly train installers on VESA mounting standards, industry requirements for securing televisions to wall studs, and installing television sets of the weight of plaintiffs' television in a safe manner and in conformity with the safety rules governing the mounting of such television sets;

B. Properly train installers on the use of stud-finding equipment and proper stud location techniques;

C. Properly train installers on the use of constructing and using blocks or wood blocks on which television brackets or mounts can be installed to ensure the safe installation of a television of the weight of plaintiffs' television set;

D. Properly train installers on weight calculations and load-bearing capacity assessments;

E. Properly train installers on wall structural integrity assessment;

F. Properly train installers on professional installation standards and best practices;

G. Establish and enforce quality control and safety inspection protocols;

H. Supervise and monitor installer compliance with safety standards;

I. Investigate and remediate prior incidents of improper installations;

J. Implement post-installation verification and testing procedures; and

K. Establish clear accountability and disciplinary procedures for improper installations.

156. The breach of these duties by Defendants was the direct and proximate cause of the improper installation of the television at Plaintiffs' residence, which in turn was the cause of Plaintiffs' injuries, harms, losses and damages, as outlined herein and incorporated herein as if set forth at length in conformity with Pa.R.C.P. 1019(g).

157. As a direct and proximate result of Defendants' negligent hiring, training, and supervision, Plaintiffs Joshua Edery and Robert Kach sustained the injuries, harms, losses, and damages as outlined herein above, which are fully incorporated by reference as if set forth at length.

WHEREFORE, Plaintiffs demand judgment in their favor against Defendants individually, collectively, jointly, severally, and/or in the
alternative for:

A. Compensatory damages for physical injuries, pain and suffering,

mental anguish, disability, disfigurement, and loss of enjoyment of life;

B. Economic damages for past and future medical expenses, lost wages, loss of earning capacity, and loss of essential services;

C. Property damages for the destroyed television, damaged wall and mounting equipment, and costs of remediation and repair;

D. Punitive damages sufficient to punish Defendants for their outrageous conduct and reckless indifference to Plaintiff's rights and safety;

E. Damages for delay as permitted by Pa.R.C.P. 238;

F. Costs of suit as permitted by Court Rule;

G. Pre-judgment and post-judgment interest as permitted by law; and

H. Such other and further relief as the Court deems just and equitable.

Plaintiff's harms, losses, and damages amount to a sum in excess of $50,000.00, exclusive of interest, costs, and punitive damages.

**COUNT VI**

**PLAINTIFFS JOSHUA EDERY and ROBERT KACH v. DEFENDANTS (BREACH OF IMPLIED WARRANTY)**

158. Plaintiffs Joshua Edery and Robert Kach incorporate by reference paragraphs one (1) through one hundred fifty-seven (157), as if each were set forth at length herein, in conformity with Pa.R.C.P. 1019(g).

159. At all times material hereto, in providing television installation and/or mounting services, Defendants, individually, jointly, severally, and/or in the alternative, impliedly warranted that the television would be installed and/or mounted in a workmanlike manner.

160. At all times material hereto, in providing television installation and/or mounting services, Defendants, individually, jointly, severally, and/or

in the alternative, impliedly warranted that the television and mount would be reasonably fit for its intended purpose of safely supporting the television on the wall.

161. At all times material hereto, in providing television installation and/or mounting services, Defendants, individually, jointly, severally, and/or in the alternative, impliedly warranted that the television would be installed and/or mounted in accordance with industry standards, including VESA standards, manufacturer guidelines, and all safety standards and guidelines regarding the installation of television sets of the weight of plaintiffs' television.

162. At all times material hereto, in providing television installation and/or mounting services, Defendants, individually, jointly, severally, and/or in the alternative, impliedly warranted that the television would be installed and mounted in a manner in which it would be safe for normal and expected use.

163. Defendants breached these implied warranties by:

A. Failing to install the television in a workmanlike manner;

B. Failing to ensure the television and mount were fit for their intended purpose;

C. Installing the television in violation of industry standards, manufacturer guidelines, and safety standards;

D. Installing the television in a manner that made it unsafe for normal and expected use; and

E. Failing to properly anchor the television to wall studs, or a block, as required by standards and best practices.

164. As a direct and proximate cause of Defendants' breach of implied warranties, Defendants caused and/or contributed to cause Plaintiffs Joshua Edery's and Robert Kach's injuries, harms, losses, and damages as enumerated herein above, which are fully incorporated

herein by reference, in conformity with Pa.R.C.P. 1019(g).

WHEREFORE, Plaintiffs demand judgment in their favor against Defendants individually, collectively, jointly, severally, and/or in the alternative for:

A. Compensatory damages for physical injuries, pain and suffering, mental anguish, disability, disfigurement, and loss of enjoyment of life;

B. Economic damages for past and future medical expenses, lost wages, loss of earning capacity, and loss of essential services;

C. Property damages for the destroyed television, damaged wall and mounting equipment, and costs of remediation and repair;

D. Punitive damages sufficient to punish Defendants for their outrageous conduct and reckless indifference to Plaintiff's rights and safety;

E. Damages for delay as permitted by Pa.R.C.P. 238;

F. Costs of suit as permitted by Court Rule;

G. Pre-judgment and post-judgment interest as permitted by law; and

H. Such other and further relief as the Court deems just and equitable.

Plaintiff's harms, losses, and damages amount to a sum in excess of $50,000.00, exclusive of interest, costs, and punitive damages.

## COUNT VII

## PLAINTIFFS JOSHUA EDERY and ROBERT KACH v. DEFENDANTS (VIOLATIONS OF THE PENNSYLVANIA UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION LAW - 73 P.S. § 201-1 et seq.)

165. Plaintiffs Joshua Edery and Robert Kach incorporate by reference paragraphs one (1) through one hundred sixty-four (164), as if each were set forth at length herein, in conformity with Pa.R.C.P. 1019(g).

166. Plaintiffs were consumers as defined by the Pennsylvania Unfair Trade Practices and Consumer Protection Law (UTPCPL), 73 P.S. § 201-1 et seq., engaging in transactions for the purchase and installation of consumer goods (the television).

167. Defendants engaged in commerce and trade in providing television delivery, installation, and mounting services to Plaintiffs and the general public.

168. Defendants engaged in the following unfair and deceptive practices in violation of 73 P.S. § 201-2:

A. Violations of § 201-2(4)(xvi): Making installations and repairs on tangible property of a nature or quality inferior to or below the standard of that agreed to in writing or otherwise promised by Defendants. Defendants promised professional installation services and instead provided defective installation work that failed to meet any reasonable standard of quality, industry standards, or the standards represented by Defendants in marketing professional installation services.

B. Violations of § 201-2(4)(xiv): Failing to comply with the terms of any written or implied warranty in connection with the sale of goods or services. Defendants impliedly warranted that the television would be installed in a workmanlike manner, according to industry standards, and in a safe manner suitable for normal use. Defendants failed to comply with these warranties.

C. Violations of the catch-all provision of § 201-2: Engaging in fraudulent or deceptive conduct, including representing that they would provide professional installation services when they failed to do so, and misrepresenting the fitness and safety of the installed television through their representations of professional expertise, or misrepresentations of the competency of the

installers.

169. Defendants' unfair and deceptive practices were the direct and proximate cause of Plaintiffs' injuries and damages.

170. Plaintiffs seek recovery under the UTPCPL, which provides for treble damages, reasonable attorney fees, and court costs. 73 P.S. § 201-9.1.

171. As a direct and proximate result of Defendants' unfair and deceptive trade practices, Plaintiffs Joshua Edery and Robert Kach sustained the injuries, harms, losses, and damages as outlined herein above.

WHEREFORE, Plaintiffs Joshua Edery and Robert Kach demand judgment in their favor and against Defendants individually, collectively, jointly, severally, and/or in the alternative for:

A. Treble damages for all actual damages sustained by Plaintiffs;

B. Reasonable attorney fees;

C. Court costs and litigation expenses;

D. Damages for delay as permitted by Pa.R.C.P. 238;

E. Costs of suit as permitted by Court Rule;

F. Pre-judgment and post-judgment interest as permitted by law; and

G. Such other and further relief as the Court deems just and equitable.

Plaintiff's harms, losses, and damages amount to a sum in excess of $50,000.00, exclusive of interest, costs, and punitive damages of interest, costs, attorney fees, and treble and punitive damages.

## COUNT VIII

## PLAINTIFFS JOSHUA EDERY and ROBERT KACH v. DEFENDANTS (UNJUST ENRICHMENT)

172. Plaintiffs Joshua Edery and Robert Kach incorporate by reference paragraphs one (1) through one hundred seventy-one (171), as if each

were set forth at length herein, in conformity with Pa.R.C.P. 1019(g).

173. Plaintiffs conferred a benefit upon Defendants by paying for professional television installation services.

174. Defendants accepted and retained the payment from Plaintiffs for these services.

175. Under the circumstances, it would be inequitable and unjust for Defendants to retain the payment for installation services that were negligently and improperly performed, resulting in the destruction of Plaintiffs' television, damage to Plaintiffs' home, and serious personal injuries to Plaintiffs.

176. As a result of Defendants' negligent installation, Plaintiffs did not receive the promised benefit of a properly installed television.

177. Defendants should be compelled to disgorge and return the benefit they unjustly retained.

178. As a direct and proximate result of Defendants' unjust enrichment, Plaintiffs Joshua Edery and Robert Kach sustained the injuries, harms, losses, and damages as outlined herein above.

WHEREFORE, Plaintiffs Joshua Edery and Robert Kach demand judgment in their favor and against Defendants individually, collectively, jointly, severally, and/or in the alternative for:

A. Restitution in the amount of all payments made to Defendants for installation services;

B. Compensatory damages for all other losses and damages sustained by Plaintiffs;

C. Damages for delay as permitted by Pa.R.C.P. 238;

D. Costs of suit as permitted by Court Rule;

E. Pre-judgment and post-judgment interest as permitted by law; and

F. Such other and further relief as the Court deems just and

equitable.

Plaintiff's harms, losses, and damages amount to a sum in excess of $50,000.00, exclusive of interest, costs, and punitive damages of interest, costs, attorney fees, and treble and punitive damages.

**JOINT AND SEVERAL LIABILITY**

179. Plaintiffs Joshua Edery and Robert Kach incorporate by reference paragraphs one (1) through one hundred seventy-eight (178), as if each were set forth at length herein, in conformity with Pa.R.C.P. 1019(g).

180. Plaintiffs allege that under Pennsylvania law, and specifically the Fair Share Rule (42 Pa. C.S. § 7102), Defendants' proportionate share of fault in this matter exceeds 60%, and therefore Defendants are jointly and severally liable for all damages awarded to Plaintiffs.

181. Alternatively, Plaintiffs allege that Defendants' conduct constitutes gross negligence, recklessness, and intentional misconduct, which exceptions to the Fair Share Rule allow joint and several liability.

WHEREFORE, Plaintiffs Joshua Edery and Robert Kach, by and through their undersigned counsel, respectfully request judgment in their favor against Defendants Best Buy - Store 432, Best Buy Co., Inc., John/Jane Does 1-3, and ABC Companies 1-3, individually, collectively, jointly, severally, and/or in the alternative, for the following relief:

A. COMPENSATORY DAMAGES:

i. For all past and future medical expenses and healthcare costs incurred and to be incurred in the treatment and management of Plaintiffs' injuries;

ii. For all past and future pain and suffering;

iii. For all past and future lost wages, income, and earnings;

iv. For loss of earning capacity;

v. For loss of essential services and personal services;

vi. For mental anguish and emotional distress;

vii. For disability and physical impairment;

viii. For loss of ability to enjoy the pleasures of life;

ix. For any disfigurement and scarring that has in the past, or may in the future result from the injuries sustained;

x. For property damage to the television, wall, and mounting equipment;

B. PUNITIVE DAMAGES:

i. For punitive damages in an amount sufficient to punish Defendants for their gross negligence, reckless indifference to Plaintiffs' safety, and outrageous conduct as outlined herein above and incorporated herein as if set forth at length in accordance with Pa.R.C.P. 1019(g);

C. UTPCPL REMEDIES:

i. For treble damages as permitted by the Pennsylvania Unfair Trade Practices and Consumer Protection Law;

ii. For reasonable attorney fees as permitted by the UTPCPL;

iii. For court costs and litigation expenses;

D. PREJUDGMENT AND POSTJUDGMENT RELIEF:

i. For damages for delay as permitted by Pa.R.C.P. 238;

ii. For pre-judgment interest at the maximum rate allowed by law from the date of the injuries until the date of judgment;

iii. For post-judgment interest at the rate prescribed by law;

iv. For all costs of suit as permitted by Court Rule, including filing fees, service of process costs, expert witness fees, discovery costs, and all other court costs; and

v. For such other, further, and additional relief as this Honorable Court deems just, proper, and equitable,

including any relief not specifically enumerated herein.

All of the above-requested relief is sought in amounts in excess of $50,000.00 per Plaintiff for each count, exclusive of interest, costs, attorney fees, treble damages, and punitive damages, and in total amounts substantially exceeding such threshold amounts. Accordingly, this is a major jury case, as compared to an arbitration level case.

## DEMAND FOR TRIAL BY JURY

Plaintiffs hereby demand a trial by jury of twelve (12) members, plus two alternates, for all issues of fact and liability in this matter.

Respectfully submitted,

**POLLACK LAW, LLC**

By: ____________________________
RONALD S. POLLACK, ESQUIRE
Attorney for Plaintiffs

Dated: January 13, 2026

**VERIFICATION**

I, RONALD S. POLLACK, ESQUIRE, hereby verify that I am the attorney for the Plaintiffs in this matter and that the facts set forth in the foregoing pleading are true and correct to the best of my knowledge, information and belief. To the extent that the pleading contains alternative averments, the signers have been unable, after reasonable investigation, to ascertain which of the inconsistent averments are true, but the signers have knowledge or information sufficient to form a belief that one of them is true. As counsel for the Plaintiffs, this verification is being provided in accordance with Pa.R.C.P. 1024(c)(2), in that the Plaintiffs are presently outside the jurisdiction of this court, and/or the verification can not be executed by the Plaintiffs within the time allowed for filing this pleading and counsel is providing said Verification in the Plaintiffs' stead. An appropriate substitution of verifications will be provided hereafter. These statements are made subject to the penalties of 18 Pa. C.S.A. 4904 relating to unsworn falsification to authorities.

**POLLACK LAW, LLC**

BY: ______________________________
RONALD S. POLLACK, ESQUIRE
Attorney for Plaintiffs

DATED: January 13, 2026